IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Aderant North America, Inc.,

     Plaintiff,

v.                          CIVIL ACTION NO.

Matt Yezovich,

     Defendant.

## COMPLAINT

Plaintiff, Aderant North America, Inc. ("Aderant"), pursuant to Fed. R. Civ. P. 7 & 65 and Fla. Stat. § 542.335, hereby and through undersigned counsel, sues Defendant, Matt Yezovich ("Yezovich"), and alleges:

## PARTIES, JURISDICTION AND VENUE

1.    This is an action to remedy and prevent further breaches of express contractual duties by Yezovich, Aderant's former Senior Director – Global Sales, Time & Compliance.

2.    The Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332.

3.    Aderant is incorporated in Florida, and has its principal place of business in Atlanta, Georgia, with an office located in Tallahassee, Florida.

4.    Defendant, Yezovich, is a resident of Irwin, Pennsylvania and a citizen

of Pennsylvania.

5.     Aderant seeks prospective temporary and permanent injunctive relief, the value of which exceeds $75,000 from Plaintiff's perspective in that the value of business relationships that will be lost if injunctive relief is not granted will greatly exceed $75,000.  Plaintiff also seeks compensatory damages including damages for injury to customer relationships, and the value of those relationships exceeds $75,000, exclusive of interest, costs, and attorney's fees.  Finally, Aderant expressly seeks attorney's fees pursuant to Fla. Stat. § 542.335, and the amount of such fees through trial would, standing alone, also exceed $75,000.

6.     Accordingly, there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

7.     Venue is proper in this Court pursuant to a mandatory forum and venue selection clause contained in Yezovich's Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement (hereinafter, the "Non-Compete Agreement"), which he executed as part of his employment with Aderant.  A true and correct copy of the Non-Compete Agreement is attached hereto as "**Exhibit A**." The forum selection clause provides in relevant portion that the parties "irrevocably agree that any legal action, suit or proceeding brought by you or the Company in a court of law that in any way arises out of this Agreement . . . must be brought solely and exclusively in the state or federal courts in the State of Florida."  The forum

selection clause further provides "[e]ach party irrevocably accepts and submits to the sole and exclusive personal jurisdiction of the state or federal courts in the State of Florida, generally and unconditionally with respect to any action, suit or proceeding brought by said party or against said party by the other party." Additionally, venue is proper in this Court because Aderant conducts business in this District.

8.     The Court has personal jurisdiction over Defendant, Yezovich, pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)7 and (2) and the United States Constitution based on his breach of the Non-Compete Agreement and his substantial activity in Florida as a result of his employment with Aderant.

9.     In his role as Aderant's Senior Director – Global Sales, Time & Compliance, Defendant, Yezovich, (i) regularly interacted with Aderant's employees in Tallahassee, Florida, (ii) regularly worked with clients and customers of Aderant located in Florida, and (iii) regularly worked with and/or solicited prospective clients and customers for Aderant located in Florida.

10.     During Yezovich's tenure as Aderant's Senior Director – Global Sales, Time & Compliance, Aderant had approximately 41 active customers located in Florida for whom Yezovich was responsible as it related to, among other things, Aderant's iTimekeep product which is discussed in greater detail below.

**Aderant's Business**

11.     Aderant is a global industry leader in providing comprehensive legal business management software for law firms and other professional services organizations.

12.     Aderant is a market leader in technology solutions for practice and financial management, time capture, ebilling, knowledge management, business intelligence, matter planning, calendaring, and docketing.

13.     One of the solutions offered by Aderant is Time Entry & Compliance which includes, among other things, the iTimekeep product which provides time tracking and time entry for lawyers.

14.     Aderant acquired the iTimekeep product in December 2019 as part of its acquisition of Bellefield Systems, LLC ("Bellefield"), a market leader in helping lawyers recover more billable time through its products which included iTimekeep. The acquisition of Bellefield was a significant investment by Aderant to expand further into the time management space for lawyers.

15.     Aderant has invested and continues to invest significant resources to develop information, methods, and techniques (and databases to store such information) to: (a) maintain, develop and nurture business relationships (and associated goodwill) with customers; (b) learn clients' business and technological needs; and (c) develop innovative technology solutions to meet clients' needs.

16.     The information, databases, and methodologies developed by Aderant described above are valuable, confidential, and proprietary to Aderant and are not readily available to Aderant's competitors or the public.

17.     The aforementioned information and goodwill developed by Aderant have significant economic value to Aderant and would be of significant economic value to competitors in the legal business management software industry.

18.     To protect its legitimate business interests with respect to the aforementioned information and consistent with regular practice, Aderant requires that key employees sign employment agreements with restrictive covenants and non-disclosure agreements.  Entry into these employment agreements is a condition of employment for the positions of trust in which employees receive confidential business information, training, and access to important client contacts.

### Yezovich's Employment with Aderant

19.     On or about September 2016, Yezovich was hired by Bellefield, which as explained above was later acquired by Aderant.

20.     Yezovich served most recently as the Senior Director – Global Sales, Time & Compliance for Aderant.  In this role, he was responsible for Aderant's Time Entry & Compliance solution including iTimekeep.  As such, Yezovich worked directly on all new sales and renewals for all of Aderant's iTimekeep customers.  In addition, Yezovich played a leading role in and had a thorough understanding of

Aderant's strategic roadmap for iTimekeep and its other Time Entry & Compliance solutions for 2021 and beyond.

21.    During his employment with Aderant, Yezovich was given access to Aderant's confidential information i.e., the identity of their clients, their key contacts with those clients, pricing variables and elements for various clients, client needs and preferences, or the successful methodologies developed by Aderant to meet their clients' needs.   This confidential information related to, among other things, Aderant's Time Entry & Compliance solution including iTimekeep.

22.    Yezovich had no prior knowledge of Aderant's confidential information.

23.    During his employment with Aderant, Yezovich had the duty to manage or help manage key customer accounts, identify and pursue new customer accounts, and compile critical information about customers for Aderant to use in its business. These customers included the approximately 551 customers for Aderant's iTimekeep product.

24.    Yezovich's duties also included creating goodwill for Aderant's exclusive benefit and use.  Yezovich was given the authority to contact clients and prospective clients of Aderant and given the use of Aderant's resources to help analyze the needs and preferences of these clients and prospective clients.  Further, Yezovich was well compensated to devote his time and effort on behalf of Aderant

using these resources to develop and maintain relationships and goodwill with customers and potential customers of Aderant. Yezovich's efforts in this regard related directly to Aderant's Time Entry & Compliance solution including iTimekeep.

### Yezovich's Contractual Obligations to Aderant

25.    To protect its valuable business interests, during Yezovich's employment, Aderant required Yezovich to enter into a certain employment agreement imposing various restrictions on Yezovich's employment and post-employment activities.

26.    Specifically, Yezovich entered into a Non-Compete Agreement with Aderant on December 19, 2019.  *See* **Exhibit A.**

27.    Yezovich's Non-Compete Agreement contained certain covenants restricting his activities post-employment, including the following "non-compete" restriction:

> 7.3 **Non-Competition**. During your employment with the Group and for a period of *two years thereafter* (the "*Restricted Period*"), you will not (i) render advice or services to, accept business from, do business with, or otherwise assist individually or with others, any other person, association, or entity who is engaged, directly or

indirectly, in any business similar or related to or competitive with the existing or intended business of the Group or (ii) hold a 5% or greater equity, voting or profit participation interest in any person, association, or entity who is engaged, directly or indirectly, in any business similar or related to or competitive with the business of the Group. You agree that the Restricted Period shall be extended by a period equal the length of any violation of this Section 7.3.

28.    Yezovich's Non-Compete Agreement contained additional restrictive covenants prohibiting certain solicitation activities post-employment, including the following "non-solicit" restrictions:

> 7.2 **Suppliers/Customers**. During your employment with the Company and for a period of ***two years thereafter***, you will not directly or indirectly (i) solicit or accept to solicit from any customer or prospect of the Group, any business that is comparable or similar to or otherwise competitive with any products or services currently or intended to be provided by the Group; (ii) request, suggest or advise any customer, prospect or supplier of the Group to curtail,

cancel, or withdraw its business from the Group; or (iii)

aid in any way any other entity in obtaining business from

any customer or prospect of the Group that is comparable

or similar to any products or services currently or intended

to be provided by the Group. For purposes of this

Agreement (including, without limitation Sections 2 and

7), "prospect" means a potential customer with whom a

Group member has had business dealings or from whom it

has obtained Proprietary Information or who has been

identified or targeted as a viable and potential prospect to

do business with the Company or has approached the

Company or has been approached by the Company for

business.

29.    Yezovich's Non-Compete Agreement also contained covenants to

maintain Aderant information as confidential and to return all Aderant property

following termination. Specifically, Section 2 of the Non-Compete Agreement

included:

You understand and agree to treat and preserve Proprietary

Information and materials as strictly confidential. Except

as authorized by the Company's Chief Executive Officer in writing (but in all cases preserving confidentiality by following Company policies and obtaining appropriate non-disclosure agreements), you further agree that you will not directly or indirectly transmit or disclose Proprietary Information to any person, corporation, or other entity for any reason or purpose whatsoever.

You understand and agree that the Proprietary Information is the exclusive property of the Group, and that, during your employment, you will use and disclose Proprietary Information only for the Group's benefit and in accordance with any restrictions placed on its use or disclosure by the Group. After your termination of your employment for any reason, you will not use in any manner or disclose any Proprietary Information.[1]

## Yezovich Violates His Non-Compete Agreement with Aderant

30.     After Yezovich resigned from his employment, Aderant learned that Yezovich had accepted a sales related position with Time by Ping ("Ping").

---

[1] As defined on Pages 1 and 2 of Yezovich's Non-Compete Agreement, "Proprietary Information" includes, but is not limited to, sales and marketing information, forecasts, customer lists, data, contracts and customer information, price lists, pricing structures and past customers.

31.     Ping is headquartered in San Francisco, California and is a direct competitor of Aderant in the timekeeping space including Aderant's product – iTimekeep – which Yezovich was directly responsible for while employed by Aderant.

32.     Ping is a company that offers automated timekeeping, billing for professional services, and data analytics for law firms.

33.     As such, Ping provides services similar to and competitive with, certain products and services provided by Aderant including specifically Aderant's Time Entry & Compliance solution – that is, iTimekeep.

34.     Ping directly competes with Aderant in the same geographical areas, including the areas Yezovich serviced as Aderant's former national Senior Director – Global Sales, Time & Compliance.

35.     Accordingly, Yezovich's employment with Ping is a violation of the Non-Compete restrictions of his Non-Compete Agreement with Aderant.

36.     Ping also solicits many of the same customers that were current or potential customers of Aderant.

37.     Accordingly, Yezovich's employment with Ping is also a violation of the Non-Solicitation restrictions of his Non-Compete Agreement with Aderant.

38.     Aderant has retained the services of the undersigned counsel to represent it in this action and is obligated to pay all reasonable costs, expenses, and

attorneys' fees.

39.     All conditions precedent to this action have been performed or have occurred.

## COUNT I - BREACH OF NON-COMPETE AGREEMENT

40.     Aderant realleges, and incorporates by reference, the allegations of paragraphs 1 through 39 as though fully set forth in this paragraph.

41.     Yezovich's actions as described above, constitute a breach of the referenced Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement.

42.     The Non-Compete Agreement is a valid and enforceable agreement.

43.     Aderant has fully performed all of its obligations under the Non-Compete Agreement.

44.     In direct breach of the Non-Compete Agreement, Yezovich is now employed with Time by Ping, a direct competitor of Aderant, and is continuing to cause irreparable harm to Aderant.

45.     On information and belief, Yezovich has also violated the Non-Compete Agreement by soliciting business for Ping from Aderant's customers, customers with whom Yezovich had developed a close relationship while he was employed by Aderant.

46.     Through his actions as described herein, Yezovich knowingly and

materially breached the terms of his Non-Compete Agreement.

47.     Aderant has legitimate business interests in its: (1) confidential, proprietary, and/or professional information; (2) substantial relationships with its existing and prospective customers; and (3) customer and prospective customer goodwill in the applicable market area.

48.     The restrictive covenants contained in the Non-Compete Agreement and sought to be enforced herein are reasonably necessary to protect Aderant's legitimate business interests.   The restrictive covenants in the Non-Compete Agreement are also reasonable as to time, geographic scope, and line of business. Aderant believes that Yezovich already has or will wrongfully misappropriate and use Aderant's proprietary and/or confidential information to the great and irreparable injury of Aderant.

49.     As a direct and proximate result of the Yezovich's breach of the referenced provisions of the Non-Compete Agreement, Aderant has and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to its customer relations, business reputation and goodwill, and for some of which injuries there is no adequate remedy at law.

50.     Aderant has an urgent need to prohibit Yezovich from, among other things: (1) continuing to violate his Agreement with Aderant; (2) retaining, using

and/or disclosing Aderant's confidential information; (3) working for Time by Ping in violation of his Non-Compete Agreement; and (4) soliciting Aderant's customers, prospective customers and employees for his own financial benefit. Yezovich has refused to acknowledge the commitments to Aderant and cease his unlawful conduct.

51.     Public interest supports the entry of an injunction against Yezovich under these circumstances. Without injunctive relief, Yezovich's conduct will continue unabated and Aderant will be left without complete relief. Based on the foregoing facts, Aderant has a substantial likelihood of success on the merits.

WHEREFORE, Aderant respectfully requests that the Court:

A.     Enter temporary and permanent injunction enjoining and restraining Yezovich, and anyone acting in concert with him or on his behalf, from continuing to breach his Non-Compete Agreement;

B.     award compensatory damages and interest to Aderant in an amount to be proven at trial;

C.     pursuant to Fla. Stat. § 542.335(1)(k) award Aderant costs, including reasonable attorneys' fees, incurred by Aderant in enforcing Yezovich's Non-Compete Agreement; and

D.     grant Aderant such other and further relief as the Court may deem just, equitable, and proper.

Dated: August 16, 2021

By:    */s/    Sherril M. Colombo*
            Sherril M. Colombo
            Florida Bar No.: 948799
            E-mail: scolombo@littler.com
            LITTLER MENDELSON, P.C.
            Wells Fargo Center
            333 SE 2nd Avenue, Suite 2700
            Miami, FL 33131
            Telephone: (305) 400-7530
            Facsimile:  (305) 603-2552
            *Counsel for Plaintiff*

4839-2297-9830.1

15